# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WARREN L. STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:13-cv-1725-WTL-DML |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of the Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Warren L. Stevens requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

## I. PROCEDURAL HISTORY

Stevens filed his applications for DIB and SSI on April 29, 2011, alleging disability beginning November 21, 2009. Stevens' applications were initially denied on June 1, 2011, and again upon reconsideration on June 30, 2011. Thereafter, Stevens requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on August 24, 2011, via video conference before ALJ Hortensia Haaversen. Stevens and his counsel appeared in Indianapolis, Indiana, and the ALJ presided over the hearing from Falls Church, Virginia. During the hearing, Dian L. Haller also testified as a vocational expert. On September 26, 2012, the ALJ issued a decision denying Stevens' applications for benefits. The Appeals Council upheld the ALJ's

decision and denied a request for review on September 26, 2013. This action for judicial review ensued.

## II.     EVIDENCE OF RECORD

The medical evidence of record in this case is sparse.

In 2003, Stevens was diagnosed with Hepatitis C. Since then, however, he has not received any treatment for the disease, as it has been asymptomatic. Although, at the hearing, Stevens claimed that the disease was "eating his liver."

In 2004, Stevens fell from a two-story building while working on a construction project. He suffered a number of fractures in his hips and arms and a torn ACL in his left knee. After the fall, he attended rehabilitation therapy and returned to workforce.

In 2009, Stevens' car was totaled in a car accident. No medical issues are specifically attributable to the car accident, however.

From approximately 2007 to 2009, Stevens worked as a fork truck operator and line worker. After being laid off from his job, he received unemployment benefits through 2011.

Stevens alleges disability beginning November 21, 2009, due to Hepatitis C and chronic back, hip, left wrist, left elbow, left knee, and pelvic pain. Stevens, however, did not receive any treatment for his impairments, other than from a chiropractor, between 2009 and 2011.

On May 26, 2011, state agency physician, Dr. Nicole Caldwell opined as follows regarding Stevens' alleged impairments:

> [P]atient has many issues related to the falling from a roof several years ago. It was a significant injury and he has residual issues but he could be able to do a job sitting, which he was comfortable [sic] and he could be reeducated to another type of work. He states that driving is not an issues [sic] and he can go long distances. This too could be an avenue to work for this individual. He at this time is not driving due to a totaled car.

Tr. at 200.

On November 7, 2011, Stevens received treatment from Dr. Ul Haq at the Open Door Clinic in Muncie. At the visit, he complained of depression and "throbbing" low back pain, with pain at a four on a ten-point scale. On November 21, 2011, however, Dr. Ul Haq reported that Stevens' "back pain [was] better," and that he was taking Naproxen. *Id.* at 244.

### III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d) (1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

3

step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.,* and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in his decision; while she "is not required to address every piece of evidence or testimony," he must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Id.*

## IV.  THE ALJ'S DECISION

At step one, the ALJ found that Stevens had not engaged in substantial gainful activity since November 21, 2009, his alleged onset date. At step two, the ALJ concluded that Stevens suffered from the following severe impairments: Hepatitis C and status post fractures of the right wrist, left elbow, and right hip. At step three, the ALJ determined that Stevens' severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Stevens had the residual functional capacity ("RFC") to perform

> medium work . . . however, he is limited to occasional lifting and carrying of 50 pounds; frequent carrying and lifting of 25 pounds; standing and walking 6-8 hours in an 8 hour day; sitting 6-8 hours in an 8 hour day; occasional climbing, ladders,

ropes and scaffolds and frequently performing all other postural activities . . . Further, he is limited to simple, routine tasks.

Tr. at 14. Given this RFC, the ALJ determined at step five that Stevens was capable of performing his past relevant work as a forklift operator, conveyor feeder, fast food worker, and dishwasher. Alternatively, taking into account Stevens' age, education, and work experience, the ALJ determined that he could perform other jobs existing in significant numbers in the national economy, those being a cashier, a ticket taker and seller, and an assembly line worker. Accordingly, the ALJ concluded that Stevens was not disabled as defined by the Act from November 21, 2009, through the date of her decision.

## V. **DISCUSSION**

Stevens advances several objections to the ALJ's decision; each argument is addressed below.

### A. Substantial Evidence/Failure to Discuss Specific Listings

First, Stevens argues that "[s]ubstantial evidence fails to support the ALJ's . . . decision that . . . Stevens was not disabled due to chronic back, hip, left wrist, left elbow, left knee and pelvic pain." Stevens' Br. at 9. In support of this argument, Stevens argues that the ALJ "ignored or rejected all of the evidence proving he was disabled," and "overlooked . . . the objective medical evidence providing a basis for his chronic pain, such as the 1-8-0[4] pelvic CT scan and the 1-19-0[4] multiple x-rays."[2] *Id.* Stevens further argues that the ALJ's decision "is contrary to the evidence, and is plainly erroneous." *Id.* at 10. The Court does not agree with Stevens' undeveloped arguments and characterization of the ALJ's decision.

---

[2] Stevens mistakenly noted that the CT scan and x-rays were taken on January 8, 2008, and January 19, 2008, respectively. The records indicate, however, that these tests were performed after his fall in 2004.

5

First, Stevens fails to identify any medical evidence, other than the 2004 CT scan and x-rays, which the ALJ "ignored," "rejected," or "overlooked," and the Court will not scour the record to the argument for Stevens. Additionally, the ALJ noted several times in her decision that Stevens sustained multiple fractures as a result of his fall in 2004. *See, e.g.*, Tr. at 16. Thus, the ALJ was well aware of his injuries, and she did not "overlook" those records. Moreover, the CT scan and x-rays do not support Stevens' contention of complete disability. They show broken bones that occurred seven years before his alleged onset date.

Stevens also argues that the ALJ "failed to specifically cite any Listed impairment in [her] Step 3 determination." Stevens' Br. at 11. Under the third step of the sequential evaluation process,

> a claimant is eligible for benefits if [he] has an impairment that meets or equals an impairment found in the Listing of Impairments. The listings specify the criteria for impairments that are considered presumptively disabling. A claimant may also demonstrate presumptive disability by showing that [his] impairment is accomplished by symptoms that are equal in severity to those described in a specific listing. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.

*Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citations omitted). Here, the ALJ considered "[t]he listings under Section 1.00 (Musculoskeletal) and 5.00 (Digestive)," but concluded that "the specific findings required by the sections [were] not present." Tr. at 13. In light of Stevens' claimed impairments, the Court does not find the ALJ's step three analysis to be improper. The Court is satisfied that the ALJ considered the listings relevant to Stevens' impairments and performed more than a perfunctory analysis. Accordingly, remand is not warranted.[3]

---

[3] In his reply brief, Stevens argues for the first time that the ALJ erred in drawing an inference between the severity of his impairments and his "'complete absence of treatment' from

6

**B. Failure to Call Medical Advisor/Listing 1.04**

Next, Stevens argues that "[t]he ALJ fail[ed] to summon a medical advisor (orthopedist, neurologist, [or] pain specialist) to testify whether the claimant's combined impairments medically equaled any Listed impairment such as 1.04." Steven's Br. at 13. Specifically, Stevens takes issue with the fact that the "agency's review physician[ ] . . . could not reasonably be relied on . . . because [her report was] dated 6-1-11." *Id.* Thus, the doctor did not review Dr. Ul Haq's medical evaluation dated November 7, 2011. The Court finds that the ALJ did not err in this respect.

Whether a claimant's condition equals a listed impairment is "strictly a medical determination," and "the focus must be on medical evidence." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999). However, the court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record and what measures are needed in to accomplish that goal. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2007); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). Thus, an ALJ's decision to call a medical expert is discretionary, 20 C.F.R. § 416.927(f)(2)(iii), and an ALJ is not required to consult a medical expert if the medical evidence in the record is adequate to render a decision on the claimant's disability. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). With regard to updated medical opinions, an ALJ must consult a medical expert, "[w]hen additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's

---

2009 to 2011." Stevens' Reply at 4. The ALJ, however, did nothing more than state the obvious regarding Stevens' medical records, and no *improper* inferences were made. More importantly, because this argument was not addressed in his initial brief, this argument is considered waived by the Court. *See Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived.") (citations omitted).

finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p.

Here, Dr. Ul Haq's treatment notes in no way indicate that Stevens suffered from disabling back pain. To the contrary, they show that his back pain was mild and conservatively treated with naproxen. Moreover, Stevens fails to cite *any* evidence showing that he medically equaled Listing 1.04.

In short, the ALJ did not err in failing to call a medical advisor to opine regarding whether Stevens met a listing, as the medical evidence in the record was adequate to render an opinion on the topic.

### C. Credibility Determination

Stevens also argues that the ALJ's credibility determination was "patently erroneous" because it was "contrary to the evidence and contrary to Social Security Ruling 96-7p." Stevens' Br. at 16. More specifically, Stevens argues that the ALJ "ignored or misinterpreted the objective evidence," and "did not articulate any legitimate reason for her credibility determination." *Id.* The Court does not agree with Stevens', once again, undeveloped arguments.

"In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). "Furthermore, the ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Id.* (citations omitted). District courts "afford a credibility finding 'considerable deference,' and overturn [a finding] only if 'patently wrong.'"

*Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 36 F.3d 751, 758 (7th Cir. 2004)).

Stevens seems to fault the ALJ for using boilerplate language to explain her credibility finding. Although the Court shares in the sentiments expressed by the Seventh Circuit regarding the meaninglessness of Social Security "templates," such as the one used here, *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012), the ALJ in this case conducted a very thorough credibility determination. After noting and evaluating each of the factors identified above, the ALJ determined that Stevens' pain was not as limiting as he alleged. *See* Tr. at 14-16. In doing so, the ALJ identified several specific reasons for her finding. For example, the ALJ noted that Stevens received unemployment benefits between 2009 and 2011. During that time, he had to attest that he was ready, willing, and able to work.[4] Indeed, he claimed he applied for three jobs a week while receiving unemployment benefits. Additionally, there is no evidence of significant deterioration in Stevens' medical condition after he stopped working in 2009. Stevens also reported daily activities of washing dishes, taking out the trash, sweeping, and taking care of his personal needs. As the ALJ noted, these activities "are . . . not commensurate with assertions that pain would curtail all sustained activity for an eight-hour workday." *Id.* at 15.

Because the ALJ considered the required factors and supported her determination with specific reasons, her credibility finding was based on substantial evidence and was not patently wrong.

---

[4] Stevens argues for the first time in his reply brief that this finding is inconsistent with the Social Security Administration's trial work program "which permits a disabled person to work without resulting in a determination that the person is not disabled." Stevens' Reply at 8. Because this argument was not raised in his initial brief, it is considered waived by the Court. Nonetheless, it was not improper for the ALJ to use Stevens' receipt of unemployment benefits as a reason for her credibility determination.

## D. Step Four and Step Five Determinations

Lastly, Stevens argues that "[t]he ALJ impermissibly failed to account for [his] chronic pain disorder which rendered him unable to perform any full time employment," in his residual functional capacity assessment and hypothetical to the vocational expert. Stevens' Br. at 20. The Court does not agree.

The ALJ must give full consideration to all of a claimant's documented impairments. *Indoanto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, "the ALJ must consider a claimant's subjective complaint of pain if supported by medical signs and findings." *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citations omitted).

Here, the ALJ performed a proper credibility determination and concluded that Stevens' complaints of disabling pain and alleged limitations were not entirely credible and also not supported by the medical evidence. Thus, the ALJ was not required to account for, include, or consider such information with regard to the hypothetical given to the vocational expert. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (citations omitted) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record."). In sum, the ALJ's determination at step five accounted for Stevens' RFC, age, education, and work experience, as well as the vocational expert's written testimony. Accordingly, the ALJ's analysis at step four and step five is supported by substantial evidence.[5]

---

[5] In his reply brief, Stevens argues for the first time that "the ALJ's determination that the claimant could mentally perform 'simple, routine tasks' . . . failed to give full consideration to all of the claimant's documented mental impairments." Stevens' Reply at 9. Because this argument was not made in his initial brief, the argument is considered waived. Regardless, the ALJ did not find any of Stevens' mental impairments to be severe, and he does not object to this finding by the ALJ.

## VI.     CONCLUSION

In this case, the ALJ satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is **AFFIRMED**.

SO ORDERED: 11/05/14

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.